BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Keith J. Wesley (State Bar No. 229276)
kwesley@bgrfirm.com
Matthew L. Venezia (State Bar No. 313812)
mvenezia@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for
Atari Interactive, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

ATARI INTERACTIVE, INC.,

Plaintiff,

vs.

INNEX, INC.; KOOL BRANDS, LLC,

Defendants.

Case No.

**COMPLAINT FOR:**

**(1) TRADEMARK INFRINGEMENT AND COUNTERFEITING;**
**(2) FALSE DESINGATION OF ORIGIN;**
**(3) COMMON LAW UNFAIR COMPETITION; AND**
**(4) TRADEMARK DILUTION.**

**DEMAND FOR JURY TRIAL**

Plaintiff Atari Interactive, Inc. ("Plaintiff" or "Atari"), as and for its complaint against defendants Innex, Inc. ("Innex") and Kool Brands, LLC ("Kool Brands" and, collectively, "Defendants"), alleges as follows:

## PARTIES

1. Plaintiff is a Delaware corporation with its principal place of business in New York, New York.

2. Plaintiff is informed and believes, and thereon alleges, that Innex is a California corporation with its principal place of business in Pomona, California.

3. Plaintiff is informed and believes, and thereon alleges, that Kool Brands is a Nevada Limited Liability Company with its principal place of business in Pomona, California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1338 because the action arises under the federal Lanham Act. *See* 15 U.S.C. §§ 1051, *et seq*. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. sections 1367 and 1338(b).

5. Venue in this district is proper under 28 U.S.C. section 1391 because Defendants are subject to personal jurisdiction here, Atari has suffered injury here, and a substantial part of the events or omissions giving rise to the claim occurred here.

6. This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants maintain their principal place of business in California, and specifically within this judicial district. This Court also has personal jurisdiction over Defendants because Defendants regularly market and sell goods, including the goods at issue in this case, to customers in California.

## GENERAL ALLEGATIONS

### A. Atari and Its Joystick Controller Are Well-Known to the Public.

7. Atari is one of the most famous video game brands in history. Founded

in the early 1970s in California, Atari became *the* pioneer in the video game industry during the 1970s and continuing into the 1980s, developing and releasing home video consoles including the Atari 2600 game console and associated Atari 2600 joystick controller. Moreover, Atari released a series of hit games – e.g., *Pong*, *Breakout*, *Asteroids*, and many others.

8. Atari became known to relevant consumers and the public at large by its inherently distinctive trade name, as well as its inherently distinctive A-shaped or "Fuji" logo design. The Atari name and logo are depicted immediately below.




9. Atari also became known to relevant consumers and the public at large by the trade dress and ornamental design of its Atari 2600 joystick controller.

10. Atari has continued to market, promote, license, and sell products worldwide under the Atari trademark for over four decades, and has cultivated wide recognition among relevant consumers and the public at large for, among other things, the distinctive design and ornamental features of the Atari 2600 joystick controller.

11. Atari has developed, promoted, and distributed new interactive entertainment and products, including a new VCS console (modeled off the design of the original 2600 unit) that raised more than $3 million in crowd-funding and is currently in production.

12. The Atari name, logo, and trade dress are valuable intellectual property

owned by Atari. Atari therefore obtained registrations with the United States Patent and Trademark Office for many of its trademarks. For example, through commercial use and contractual agreements with its predecessors-in-interest, Atari is the owner of USPTO Trademark Registration No. 4,214,210 for the ATARI name and logo used in connection with, among other things, "video game machines for use with televisions; plug and play game units for playing video and computer games with the use of an external display screen or monitor[.]" Appended hereto as Exhibit 1 is a true and correct copy of the aforementioned trademark registration.

13. Turning to the iconic Atari 2600 joystick controller, in 1980, the United States Patent and Trademark Office issued two design patents, U.S. Patent Nos. D254,544 and D255,565 (attached hereto as Exhibits 1 and 2, respectively), both since expired, for the ornamental design elements of the Atari 2600 joystick controller depicted in the following representative figures:

| U.S. Patent No. | Representative Figures |
|---|---|
| D254,544 | FIG. 1 FIG. 2 FIG. 3 |

| | |
|---|---|
| D255,565 |  FIG. 1. FIG. 2. FIG. 7. |

14. Video gamers new and old recognize and revere not only Atari, but the Atari 2600 joystick controller as a very well-known and iconic part of video gaming history.

15. In fact, the Atari 2600 was named to *IEEE Spectrum*'s Consumer Electronics Hall of Fame as one of "The Greatest Gadgets of the Past 50 Years."[1] *IEEE Spectrum* is the flagship magazine and website of the Institute of Electrical and Electronics Engineers, the world's largest professional organization devoted to engineering and the applied sciences with over 400,000 members.[2] To help readers readily identify and recall the Atari 2600, *IEEE Spectrum* selected and used a photo that prominently features not only the console, but also the distinctive Atari 2600 joystick controller:

---

[1] *See* https://spectrum.ieee.org/consumer-electronics/gadgets/the-consumer-electronics-hall-of-fame-atari-2600 (last visited December 30, 2020).

[2] *See* https://spectrum.ieee.org/static/aboutus (last visited December 30, 2020).



16. Atari has expanded into a multi-platform, global interactive entertainment company, adapting many of its classic games for online platforms such as Facebook, smartphones, and tablets. Atari has an active licensing business through which licensed Atari hardware is produced, and has further extended its brand into other media, merchandising, and publishing categories.

17. Atari continues to market, license, and/or sell products embodying the ornamental design and iconic trade dress of the Atari 2600 joystick controller. One example is the Atari 2600 Plug & Play Joystick, which incorporates many of the distinctive trade dress elements including, but not limited to, the rectangular base with a hexagonal joystick mounted near the center, a single prominent red button located at the top left corner of the base, and a dashed circle circumscribing the base of the joystick:




18. Through extensive and continuous promotion and sales, unsolicited press, and word of mouth, Atari owns valuable intellectual property rights related to the Atari 2600 joystick controller, including, among other things, the common law rights in its trade dress and overall look and feel.

**B. Defendants Deliberately Seek to Trade upon Atari's Reputation and Goodwill by Using a Counterfeit Atari Trademark and Selling a Knockoff of the Atari 2600 Joystick Controller.**

19. Founded in 2004, Innex describes itself on its website, www.innexinc.com, as having "been in the forefront of the Retro gaming revolution, securing all retro related merchandise and an exclusive partnership with Retro-Bit® - the leading Retro Gaming brand in the world today." Innex further brags that its "current product portfolio includes, but is not limited to, first party and third party video game accessories for all consoles ranging from Retro such as Atari®[.]"

20. Retro-Bit is a registered trademark of Kool Brands, and, upon information and belief, Kool Brands maintains www.retro-bit.com. Upon information and belief, Kool Brands is an agent of and partner with Innex in marketing and selling the Retro-Bit products, and is under the control of Innex.

21. Notably, Defendants have never held a license to use any of Atari's intellectual property, specifically, but not limited to, Atari's trademark and intellectual property rights in the Atari 2600 joystick controller.

22. Innex, on its website, advertised, marketed, displayed, offered for sale, sold, distributed, and profited from its "Atari 2600 Joystick Controller" which is a part of its Retro-Bit line of products (the "Retro-Bit joystick controller").

23. Kool Brands, on www.retro-bit.com, advertises, markets, and displays, the Retro-Bit joystick controller, with a link to Amazon where it can be purchased.

24. Innex's product listing page for the Retro-Bit joystick controller uses the Atari trademark to describe its product, as seen below:




25. Kool Brands' product listing page for the Retro-Bit joystick controller uses the Atari trademark to describe its product, as seen below:



26. The Retro-Bit joystick controller further has numerous and striking similarities to the authentic Atari 2600 joystick controller.

27. Below is a side-by side comparison between the authentic Atari 2600 joystick controller and the Retro-Bit joystick controller.

| Atari 2600 Joystick Controller | Retro-Bit Joystick Controller |
|---|---|
| ATARI | retro-bit |

28. The Atari 2600 joystick controller has a number of distinctive design elements that, when taken together, create an overall look and feel that consumers associate with Plaintiff Atari. Some examples of these distinctive features include, but are not limited to, the rectangular base with a protruding hexagonal joystick mounted substantially centrally thereon, a single prominent button located at the top left corner of the base, a rubber boot that connects the joystick to the base and is characterized by three concentric circular ridges of progressively decreasing height, a two-tiered tapered design to the base, and a dashed circle circumscribing the base of the joystick and rubber boot.

29. The Retro-Bit joystick controller incorporates these same, and other, distinctive design elements that make up the Atari 2600 joystick controller's trade dress.

30. The Retro-Bit joystick controller is *intended* to infringe on Atari's

rights in the trade dress and overall look and feel of the Atari 2600 joystick controller. Defendants' own websites identify the Retro-Bit joystick controller as a "Atari 2600 Joystick Controller."

**FIRST CLAIM FOR RELIEF**

**(Trademark Infringement and Counterfeiting)**

31. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

32. Atari is the owner of the registered Atari® trademark for the categories of goods at issue here, i.e., for video game machines for use with televisions; plug and play game units for playing video and computer games with the use of an external display screen or monitor.

33. The Atari® trademark is a registered, valid, and protectable mark.

34. Defendants advertise, market, and sell their Retro-Bit joystick controller using a counterfeit Atari trademark. Defendants use the trademark on their websites to describe the goods, for promotional purposes, and to drive consumers to the website.[3]

35. Defendants' use of the counterfeit Atari® trademark is likely to cause confusion among ordinary purchasers as to the source of the goods.

36. Atari has never consented to Defendants' use of its Atari® trademark.

37. Defendants have infringed upon the Atari® trademark and engaged in trademark counterfeiting willfully.

38. As a proximate result of the unfair advantage accruing to Defendants from using a confusingly similar mark and deceptively trading on Atari's goodwill, Defendants have made substantial sales and profits in amounts to be established according to proof.

[3] While the product listing for the Retro-Bit joystick controller has now been removed from www.innexinc.com, it remains on www.retro-bit.com.

39. As a proximate result of the unfair advantage accruing to Defendants from using a similar or quasi-similar mark and deceptively trading on Atari's goodwill, Atari has been damaged and deprived of substantial sales and has been deprived of the value of its trademark as a commercial asset, in an amount to be established according to proof.

40. Unless restrained by the Court, Defendants will continue to infringe upon the Atari® trademark. Pecuniary compensation will not afford Atari adequate relief for the damage to its trademark and brand. In the absence of injunctive relief, consumers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Defendants and their goods.

41. Defendants' acts were committed, and continue to be committed, with actual notice of Atari's exclusive rights and with the intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Plaintiff and its products. Pursuant to 15 U.S.C. section 1117, Atari is, therefore, entitled to recover three times its actual damages or three times Defendants' profits, whichever is greater, together with its attorneys' fees. Atari is also entitled to statutory damages of $2 million per registered mark. In addition, pursuant to 15 U.S.C. section 1118, Atari is entitled to an order requiring destruction of all infringing products and promotional materials in Defendants' possession.

**SECOND CLAIM FOR RELIEF**

**(False Designation of Origin)**

42. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

43. The Atari® trademark is inherently distinctive and has also acquired secondary meaning through extensive promotion and sales, over unsolicited press, and word of mouth for almost five decades.

44. Through sales, promotional activities, unsolicited press, and word-of-mouth, Atari has acquired secondary meaning in a distinctive trade dress for the

Atari 2600 joystick that includes the following elements, among others: (a) the rectangular base with a protruding hexagonal joystick mounted substantially centrally thereon; (b) a single prominent button located at the top left corner of the base; (c) a rubber boot that connects the joystick to the base and is characterized by three concentric circular ridges of progressively decreasing height; (d) a two-tiered tapered design to the base; and (e) a dashed circle circumscribing the base of the joystick and rubber boot. Atari's trade dress consists of the overall look and feel of the Atari 2600 joystick controller, and not any one element individually. The aforementioned trade dress is referenced as the "Joystick Designation of Origin."

45. Defendants are advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from products incorporating the Joystick Designation of Origin and Console Designation of Origin or nearly identical variations thereof. Defendants also use the Atari® trademark in their marketing, advertising, and offering for sale of these products.

46. Defendants' use of Atari's trademark and Joystick Designation of Origin is likely to cause confusion among ordinary purchasers as to the source of the goods.

47. Atari has never consented to Defendants' use of its trademark or Joystick Designation of Origin.

48. Defendants have infringed, and continue to infringe, upon Atari's trademark and Joystick Designation of Origin willfully.

49. As a proximate result of the unfair advantage accruing to Defendants from using a similar or quasi-similar trademark and trade dress and deceptively trading on Atari's goodwill, Defendants have made substantial sales and profits in amounts to be established according to proof.

50. As a proximate result of the unfair advantage accruing to Defendants from using a confusingly similar trademark and trade dress and deceptively trading on Atari's goodwill, Atari has been damaged and deprived of substantial sales and

has been deprived of the value of its Atari® trademark and Joystick Designation of Origin as commercial assets, in amounts to be established according to proof.

51. Defendants' acts were committed, and continue to be committed, with actual notice of Atari's exclusive rights and with the intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Atari. Pursuant to 15 U.S.C. section 1117, Atari is therefore entitled to recover three times its actual damages or three times Defendants' profits, whichever is greater, together with its attorneys' fees. In addition, pursuant to 15 U.S.C. section 1118, Atari is entitled to an order requiring destruction of all infringing products and promotional materials in Defendants' possession.

**THIRD CLAIM FOR RELIEF**

**(Common Law Unfair Competition)**

52. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

53. Defendants' unauthorized use of Atari's trademark and trade dress is likely to cause consumer confusion as to the source, origin, sponsorship, and association of Defendants' products.

54. Atari has been, and will continue to be, damaged and irreparably harmed by the actions of Defendants unless Defendants are enjoined by this Court.

55. Atari has no adequate remedy at law.

56. Atari is entitled to recover damages and/or Defendants' profits in an amount to be determined at trial.

57. Atari is informed and believes, and thereon alleges, that Defendants committed the foregoing acts with the intention of depriving Atari of its legal rights, with oppression, fraud, and/or malice, and in conscious disregard of Atari's rights. Atari is, therefore, entitled to an award of exemplary and punitive damages, according to proof.

## FOURTH CLAIM FOR RELIEF

### (Trademark Dilution)

58. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

59. The Atari® trademark and Joystick Designation of Origin are widely recognized by the general consuming public of the United States as originating with Atari.

60. Defendants' unauthorized use of the Atari® trademark and Joystick Designation of Origin has the effect of diluting, tarnishing and blurring them.

61. Atari is entitled to recover damages and/or Defendants' profits in an amount to be determined at trial.

62. Atari is entitled to an order preliminarily and permanently enjoining Defendants from using the Atari® trademark and Joystick Designation of Origin in the future.

63. Because Defendants have willfully intended to cause the dilution of Atari's trademark and trade dress, Atari is further entitled to recover its costs of suit and reasonable attorney's fees pursuant to 15 U.S.C. sections 1117 and 1125(c)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. For preliminary and permanent injunctions enjoining and restraining Defendants, their agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with Defendants, from:

a. designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates or is marketed in conjunction with the Atari® trademark or Plaintiff's 2600 joystick trade dress;

b. representing or implying, directly or indirectly, to retailers, customers, distributors, licensees, or any other customers or

potential customers of Defendants' products that Defendants' products originate with, are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with Plaintiff;

2. For an order requiring the destruction of all of Defendants' products, marketing, advertising, or promotional materials that use the Atari® trademark or include any trade dress that is confusingly similar to Plaintiff's 2600 joystick trade dress;

3. For an accounting of all profits obtained by Defendants from sales of the infringing products and an order that Defendants hold all such profits in a constructive trust for the benefit of Plaintiff;

4. For an award to Plaintiff of all profits earned by Defendants from their infringing acts;

5. For compensatory damages according to proof;

6. For treble, exemplary, and/or punitive damages;

7. For statutory damages of no less than $2 million per registered trademark;

8. For pre-judgment interest on all damages awarded by this Court;

9. For reasonable attorney's fees and costs of suit incurred herein; and

10. For such other and further relief as the Court deems just and proper.

DATED: January 15, 2021

BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Keith J. Wesley
Matthew L. Venezia

By: */s/Matthew L. Venezia*
Keith J. Wesley
Attorneys for Atari Interactive, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: January 15, 2021

BROWNE GEORGE ROSS LLP
Keith J. Wesley

By: *<u>/s/Matthew L. Venezia</u>*
Keith J. Wesley
Matthew L. Venezia
Attorneys for Plaintiff
Atari Interactive, Inc.